IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ROBERT EARL ROYSTER,
    Plaintiff,

vs.                                       Case No. 3:10cv31/LAC/EMT

SHERIFF DAVID MORGAN, et al.,
    Defendants.
_____/

## REPORT AND RECOMMENDATION

      This matter is before the court on Plaintiff's fourth amended civil rights complaint, filed pursuant to 42 U.S.C. § 1983 (Doc. 40). Leave to proceed in forma pauperis has been granted (Doc. 6).

      Because Plaintiff is proceeding in forma pauperis, the court may dismiss the case if satisfied that the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). A complaint is frivolous under section 1915(e) "where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S. Ct. 1827, 1833, 104 L. Ed. 2d 338 (1989). Dismissals on this ground should only be ordered when the legal theories are "indisputably meritless," *id.*, 490 U.S. at 327, or when the claims rely on factual allegations that are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 31, 112 S. Ct. 1728, 1733, 118 L. Ed. 2d 340 (1992). Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). Mitchell v. Farcass, 112 F.3d 1483, 1485 (11th Cir. 1997). The allegations of the complaint are taken as true and are construed in the light most favorable to Plaintiff. Davis v. Monroe County Bd. Of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997). However, such acceptance should not be given blindly; only well-pleaded factual allegations are taken as true

and only reasonable inferences are drawn in favor of the plaintiff. *See* Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992); Marrero v. City of Hialeah, 625 F.2d 499, 502 (5th Cir. 1980);[1] *see also* Long v. Satz, 181 F.3d 1275, 1278 (11th Cir. 1999) (per curiam) ("reasonable inferences" drawn); Associated Builders, Inc. v. Ala. Power Co., 505 F.2d 97, 100 (5th Cir. 1974) ("unwarranted deductions of fact are not admitted as true"). A plaintiff must allege more than mere "labels and conclusions"; the complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964–65, 167 L. Ed. 2d 929 (2007) (citations and internal quotations omitted). Indeed, "any conclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts do not prevent dismissal." Weissman v. Nat'l Ass'n of Sec. Dealers, 500 F.3d 1293, 1305 (11th Cir. 2007) (en banc) (Tjoflat, J., dissenting) (citing Associated Builders, Inc., 505 F.2d at 99). The complaint may be dismissed if the facts as pleaded do not state a claim to relief that is plausible on its face. *See* Bell Atl. Corp., *supra* (retiring the often-criticized "no set of facts" language previously used to describe the motion to dismiss standard and determining that because plaintiffs had "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed" for failure to state a claim). Upon review of the amended complaint, the court concludes that dismissal of this action is warranted.

I.  RELEVANT ALLEGATIONS

Plaintiff names four Defendants in this action, all of whom are employees of the Escambia County Sheriff's Office: Deputy Peacock, Nurse Carla Watts, Nurse Rachel, and Nurse Liz (Doc. 40 at 1–3).[2] Plaintiff alleges that on August 8, 2006, two of his family members became involved in an altercation, and when he attempted to stop it, one of the participants began attacking him (*id.* at 8–9). Plaintiff states a witness called the Escambia County Sheriff's Office, and Deputy Peacock responded to the scene (*id.* at 9). Deputy Peacock arrested Plaintiff and one of the other family members (*id.*).

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as precedent all of the decisions of the former Fifth Circuit decided prior to October 1, 1981.

[2] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those Plaintiff may have assigned.

Case No.: 3:10cv31/LAC/EMT

Once at the Escambia County Jail ("Jail"), Plaintiff asked Deputy Peacock and an unidentified nurse to take him to the hospital because he could hardly breathe or walk, and his shirt was bloody (*id.*). Deputy Peacock and the nurse refused to take him to the hospital (*id.*). Later that afternoon, Plaintiff was transferred to the "main Jail" (*id.*). He states he was experiencing severe pain in his forehead, shoulder, stomach, rib cage, and back, and he had a seizure and passed out (*id.* at 9–10). Plaintiff asked an unidentified officer for medical attention, and the officer responded that he had notified the nurse, but the nurse never came (*id.* at 9–10). Plaintiff alleges he "sold" his food to other inmates for pain medication (*id.* at 10).

The next day, on August 9, 2006, Nurse Carla Watts distributed medication to inmates in Plaintiff's dormitory (*id.*). Plaintiff declared a medical emergency, and Nurse Watts notified an officer (*id.*). Plaintiff was taken to emergency sick call and given pain medication (*id.*).

On August 10, 2006, Nurse Rachel distributed medication to inmates in Plaintiff's dormitory (*id.*). Plaintiff asked her for pain medication, but she responded that Nurse Carla had not ordered any for him (*id.*). Plaintiff states Nurse Rachel refused to treat him (*id.*). Plaintiff was then moved to another cell, and he told an officer that he had been brutally beaten before he was arrested (*id.*). Plaintiff states he was too much pain to lie down, and he eventually had a seizure and blacked out (*id.*). He states he continued to "sell" his food to obtain pain medication from other inmates; and other inmates eventually gave him their medication without taking his food (*id.* at 11).

Seven days later, on August 17, 2006, Plaintiff was seen by the medical director (*id.*). The medical director told Plaintiff she would order pain medication and x-rays (*id.*). The next morning, Nurse Rachel again distributed medication to inmates in Plaintiff's dormitory (*id.*). She told Plaintiff there was no pain medication for him (*id.*). Plaintiff received the x-rays and was immediately transported to Sacred Heart Hospital (*id.*). A nurse at the hospital told Plaintiff that both of his lungs were punctured, and one lung had collapsed (*id.* at 11–12). Plaintiff was discharged the same day, with instructions from the doctor that another x-ray should be taken two days later, on August 19 (*id.* at 12). August 19 was a Saturday, so Nurse Liz told Plaintiff that the x-ray would be taken on Monday, August 21 (*id.*). Plaintiff was placed in the infirmary (*id.*). On August 22, a doctor at the Jail informed Plaintiff that he had fluid in his lungs and would be transported to the hospital the next day (*id.*). Plaintiff responded that he was in pain and needed to

go to the hospital immediately (*id.*). He was then transported to the hospital and received emergency surgery to drain his right lung (*id.*). Plaintiff remained in the hospital for five days and was then returned to the Jail and placed in the infirmary for a day (*id.*).

On August 28, 2006, Plaintiff was discharged from the infirmary, but he injured himself the next day (*id.* at 13). Plaintiff was taken to the infirmary and transported to the hospital (*id.*). He received more stitches and was discharged to the infirmary (*id.*). Plaintiff was moved to a cell the next day (*id.*). Upon Plaintiff's release, on September 8, 2006, he saw a doctor, who advised him that he had suffered a serious injury from the massive blows to his back and rib cage, and his lung had been punctured (*id.*).

Plaintiff claims that Deputy Peacock violated his rights by refusing to provide him medical treatment after Plaintiff told him that he suffered massive injuries to his body (*id.* at 6–7). Plaintiff claims that Nurse Carla Watts, Nurse Rachel, and Nurse Liz also refused to provide medical treatment (*id.*). As relief, Plaintiff seeks damages in the amount of $5,000,000.00 (*id.*).

II. ANALYSIS

It is well settled that the government has a constitutional duty to provide minimally adequate medical care to prisoners. Harris v. Thigpen, 941 F.2d 1495, 1504 (11th Cir. 1991). Claims of deliberate indifference to the serious medical needs of pretrial detainees are governed by the Fourteenth Amendment's Due Process Clause rather than by the Eighth Amendment's Cruel and Unusual Punishment Clause, which governs similar claims by convicted prisoners. Lancaster v. Monroe County, Ala., 116 F.3d 1419, 1425 n.6 (11th Cir. 1997). Because the Eleventh Circuit has held "that the minimum standard for providing medical care to a pre-trial detainee under the Fourteenth Amendment is the same as the minimum standard required by the Eighth Amendment for a convicted prisoner," Plaintiff's claim must be analyzed under the decisional law of both amendments. *Id.*

Medical treatment violates the Eighth Amendment "only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Id.* at 1505 (citing Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)). Incidents of mere

negligence or malpractice do not rise to the level of constitutional violations. *Id.* (citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)).

Stating a constitutional claim of denial of adequate medical care requires satisfying both an objective and subjective component. Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000). First, there must be conduct by prison officials which, objectively speaking, is "sufficiently serious" to constitute a deprivation "'denying the minimal civilized measure of life's necessities.'" *Id.* (quoting Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) (internal quotation omitted)). Second, the prison officials must possess a subjective intent to use the medical deprivation as a means of punishment. *Id.* (citations omitted).

Both the objective and subjective components encompass two subsidiary requirements. Taylor, 221 F.3d at 1258. As to the objective prong, an objectively serious deprivation requires showing an objectively "serious medical need." Estelle, 429 U.S. at 104. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. DeKalb Regional Youth Detention Center, 40 F.3d 1176, 1186 (11th Cir. 1994), *abrogated on other grounds by* Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002); *see* Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (serious medical need is one that, if left unattended, "pos[es] a substantial risk of serious harm."). In addition, an objectively serious deprivation requires showing the response made by the defendant to that need was so deficient as to constitute "an unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 105–06 (internal quotation marks omitted); *see* Taylor, 221 F.3d at 1257; *see also* Adams v. Poag, 61 F.3d 1537, 1543–44 (11th Cir. 1995).

To show the required subjective intent to punish, the plaintiff must demonstrate that the defendant acted with an attitude of "deliberate indifference." Estelle, 429 U.S. at 105. "Deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Farrow v. West, 320 F.3d 1235, 1245–46 (11th Cir. 2003) (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999) and Taylor, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively

serious need" and that his response must constitute "an objectively insufficient response to that need")).

A complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference. Harris v. Coweta County, 21 F.3d 388, 393 (11th Cir. 1994). However, where the inmate has received medical treatment, and the dispute is over the adequacy of that treatment, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. Harris, 941 F.2d at 1507 (quoting Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989)). To do otherwise would be "to constitutionalize claims that sound in tort law." Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (quotation omitted).

A delay in providing medical treatment can constitute deliberate indifference. Estelle, 429 U.S. at 104–05. However, "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." Townsend v. Jefferson County, 582 F.3d 1252, 1259 (11th Cir. 2009).

In the instant case, despite the court's previously advising Plaintiff of the Eighth Amendment standard and that his factual allegations failed to show a violation of that standard (*see* Doc. 38), Plaintiff has still failed to state an Eighth Amendment claim as to any Defendant. Plaintiff alleges Deputy Peacock refused to take him to the hospital upon their arrival at the Jail. However, in light of the fact that a medical professional was present at the time, Deputy Peacock's failure to take him to the hospital does not suggest deliberate indifference; it was reasonable for Peacock to rely on the medical professional to assess Plaintiff's medical needs and determine the necessary course of treatment.

As to Nurse Carla Watts, Plaintiff acknowledges that when he requested medical care from her, she immediately facilitated an escort to the medical department for "emergency sick call," which was a reasonable response. Furthermore, although Plaintiff states Nurse Watts failed to order pain medication, the facts do not suggest that her conduct rose beyond the level of negligence to deliberate indifference. Likewise, with regard to Nurse Rachel, the fact that there was no medication designated for Plaintiff when she distributed medication in his dormitory does not suggest deliberate indifference on her part. Furthermore, Plaintiff does not suggest that he requested anything but pain

medication from Nurse Rachel, or that he indicated he required other medical treatment. Plaintiff was obviously aware, from his interaction with Nurse Watts, that he could declare a medical emergency if he required medical attention, but he did not do so.

Finally, as to Nurse Liz, the facts do not suggest that the two-day delay (from Saturday to Monday) in Plaintiff's receiving a follow-up examination by a doctor and an x-ray (as recommended by the Sacred Heart Hospital doctor upon Plaintiff's release from the hospital) was attributable to deliberate indifference by Nurse Liz. Additionally, the facts do not suggest that the two-day delay caused the fluid in Plaintiff's lungs or otherwise had a detrimental effect on his condition.

III. CONCLUSION

Based upon the foregoing, the undersigned concludes that this action should be dismissed for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Accordingly, it is respectfully **RECOMMENDED**:

1. That this action be **DISMISSED** for failure to state a claim on which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

2. That the clerk be directed to enter judgment accordingly and close the file.

At Pensacola, Florida, this 2nd day of February 2011.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only. A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings.** See **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**